UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00187-FDW-DCK

| | |
|---|---|
| MORGAN STANLEY PRIVATE BANK, NA, | ) |
| Petitioner, | ) |
| v. | ) **ORDER** |
| CHARLES RANDALL, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate Arbitration Award, (Doc. No. 51). This matter has been fully briefed, (Doc. Nos. 52, 53, 60, 61, 62, 67), and is ripe for ruling. For the reasons set forth below, Petitioner's Motion is DENIED.

## I. BACKGROUND

Respondent Charles Randall is a former employee of Petitioner Morgan Stanley Private Bank, NA ("MSPB"). (Doc. No. 52, p. 8.) He worked in Charlotte. Respondent is a male over forty and claimed he was terminated because of his age and gender in violation of federal law. At the relevant time, Respondent's supervisors had expressed concerns about his performance, but he had a history of positive performance reviews. (Doc. No. 53-6.) Also at the relevant time, Petitioner's affiliate Morgan Stanley Wealth Management ("MSWM") was running a diversity initiative under which diversity was a performance metric for each region. Kristen Sario was part of the leadership team in Morgan Stanley's "Carolinas Complex." Sario was not Respondent's direct supervisor and, at least on paper, could not unilaterally terminate him. After Petitioner's role apparently sat unfilled for several months, Petitioner filled it with a male who was younger than Respondent but over the age of forty.

1

Respondent's employment contract included an agreement to arbitrate under the Rules of the Judicial Arbitration and Mediation Services, ("JAMS"). The parties submitted a dispute concerning Randall's termination to arbitration before Terrence Lee Croft, an arbitrator with JAMS. (Doc. No. 53-1.)[1] JAMS Rules require potential arbitrators to answer the following question: "Is there any other matter that . . . might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial?" (Doc. No. 53-4, p. 4.) Croft answered "No." (Id.) JAMS Rules further require a potential arbitrator to certify he has made a reasonable effort to inform himself of any facts that may cause a person to entertain a "reasonable doubt" about his impartiality and has disclosed any such facts to the parties. (Id.) Croft did so. (Id.)

The parties participated in an arbitration hearing before Croft in October 2021 and February 2022.[2] (Doc. No. 53-1, ¶ 10, p. 4.) Croft allegedly "[slept] through critical portions of the testimony provided by [Respondent]'s witnesses" on five separate days of the hearing. (Id., ¶ 11, p. 5.) Respondent's counsel recalls observing Croft's eyes closed once, on October 22, 2021, and he "immediately" responded when counsel suggested a five-minute break. (Doc. No. 61, ¶ 44, p. 9; Doc. No. 61-25, p. 2.) Petitioner's counsel did not raise the issue of Croft's alleged sleeping during the hearing. In July 2022, the Croft released an interim order (the "Merits Award"). (Doc. Nos. 51-1, 53-9.) The Merits Award adopted much of Respondent's proposed Order, but did not award him all the damages he sought. (Doc. No. 53-9; Doc. No. 53-7.) Specifically, Respondent sought $300,000 in damages for emotional distress, $2,099,790 in punitive damages, and prejudgment

---

[1] When selecting an arbitrator, both parties ranked Croft last. (Doc. No. 53, ¶ 6, p. 3; Doc. No. 61, ¶ 6, p. 2.)
[2] The hearing was delayed due to the COVID-19 pandemic, including once from January 2022 to February 2022 due to illness of Petitioner's employee and Respondent's former supervisor. (Doc. No. 61, ¶ 14, p. 3.)

interest, but Croft awarded just $250,000 in punitive damages with no emotional distress damages and no prejudgment interest.[3]

After Croft issued the Merits Award, Petitioner engaged a third-party to investigate him. (Doc. No. 52, p. 9; Doc. No. 53, ¶ 16, pp. 9–10.) The third-party investigator discovered that in 1993 Croft and forty-eight other named plaintiffs lost a securities fraud lawsuit against Shearson Lehman Brothers, a predecessor of Morgan Stanley. (Doc. No. 53-12.) Those claims were dismissed under the applicable statute of limitations. (Doc. No. 53-13.) Based on this discovery, Petitioner requested JAMS replace Croft as the Arbitrator, but JAMS denied the request. (Doc. No. 53, ¶¶ 22, 25, pp. 11–12; Doc. No. 53-14; Doc. No. 53-18.) Croft also rejected Petitioner's request that he voluntarily recuse himself without waiting for briefing from Respondent. (Doc. No. 53-18; Doc. No. 53-23.)

On April 10, 2023, Croft entered a final award in favor of Respondent on his age discrimination claim, including $373,180 in compensatory damages, $250,000 in punitive damages, and $998,732 in attorneys' fees and costs. (Doc. No. 53-28; Doc. No. 51-1.) On April 13, 2023, Petitioner filed a petition to vacate the award in the United States District Court for the Northern District of Georgia. (Doc. No. 1.) On Respondent's Motion, the Northern District of Georgia transferred the case here to the Western District of North Carolina, where Respondent worked for MSPB, and the venue selected in the parties' arbitration agreement. (Doc. No. 41.)

## II. LEGAL STANDARD

The goal of arbitration is to serve as an efficient, cost-saving, dispute resolution mechanism. See Remmy v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994). To avoid

---

[3] As part of his request to delay the arbitration hearing in the hope the COVID-19 pandemic would subside and allow the hearing to proceed in person, Respondent agreed to forego any claim for prejudgment interest . . . from January 11 through October 18." (Doc. No. 53-5.)

frustration of this goal, the Federal Arbitration Act (the "FAA") restricts judicial review of an arbitrator's award to an exceptionally narrow scope. See Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 586 (2008); U.S. Postal Serv. v. Am. Postal Workers Union, 204 F.3d 523, 527 (4th Cir. 2000); Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007); Long John Silver's Restaurants, Inc. v. Cole, 514 F.3d 345, 351 (4th Cir. 2008) ("[A]ny judicial review of an arbitration award must be an extremely narrow exercise."). Indeed, the scope of such review is "among the narrowest known at law." Union Pac. R.R. v. Sheenan, 439 U.S. 89, 91 (1978). Reviewing courts sit to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." U.S. Postal Serv., 204 F.3d at 527. "[A]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusions." Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 281 (4th Cir. 1992) (internal quotations omitted). "Convincing a federal court to vacate an arbitral award is a herculean task." Warfield v. Icon Advisers, Inc., 26 F.4th 666, 669 (4th Cir. 2022).

Generally, a federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the FAA. 9 U.S.C. § 10. These include:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Three S. Del., 492 F.3d at 527 (citing 9 U.S.C. § 10(a)).

In addition to these statutory grounds, "certain limited common law grounds" for vacating an award exist. Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 243 (4th Cir. 2006). As explained by the Fourth Circuit, an award that "fails to draw its essence from the contract, or . . . evidences a manifest disregard of the law" would be properly vacated upon common law grounds. Id. However, the existence of any such purported extra-statutory grounds for vacatur is currently in serious doubt. See Hall Street, 552 U.S at 576, 578, 584–85 & 587 (finding that Section 9 contains no "hint of flexibility"); see also Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 193 n.13 (4th Cir. 2010) (recognizing that in the wake of Hall Street considerable uncertainty exists "as to the continuing viability of extra-statutory grounds for vacating arbitration awards"). In sum, the movant must meet "the heavy burden of showing one of the grounds specified" in the FAA before a federal court may vacate an arbitration award. Three S Del., 492 F.3d at 527.

### III. JURISDICTION

Neither party raises a jurisdictional question. But federal courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and in recent years the law as to federal jurisdiction over petitions under Sections 9 and 10 of the FAA has shifted. See Badgerow v. Walters, 596 U.S. 1 (2022) (holding "look through" jurisdiction does not apply to a petition to confirm or vacate an arbitration award). A party that seeks to proceed in federal court must allege the federal court's jurisdiction over the matter. Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 432 (4th Cir. 2014) (quoting Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008)). In Badgerow, the Supreme Court held a court cannot "look through" to the parties' underlying dispute to establish federal jurisdiction over a petition to vacate or confirm an arbitration award under the FAA. Badgerow, 596 U.S. at 11–12. Instead, in such cases, "there must be an independent basis for the district court to exercise subject matter

5

jurisdiction." SmartSky Networks, LLC v. DAG Wireless, LTD, 93 F.4th 175, 180–81 (4th Cir. 2024).

Here, the Court concludes it has subject matter jurisdiction over the petition under 28 U.S.C. § 1332. Petitioner Morgan Stanley Private Bank is domiciled in New York. (Doc. No. 1, p. 1.) Respondent Charles Randall is domiciled in North Carolina. (Id.) The Fourth Circuit and Supreme Court have held a petition to vacate under Section 10 is in essence a contract dispute governed by state law. Badgerow, 596 U.S. at 9; SmartSky, 94 F.4th at 182. In this case, that contract dispute is between citizens of different states and involves an award of over $600,000 in damages and nearly $1 million in fees and costs, in excess of $75,000. (Doc. No. 1-1, p. 2.) For these reasons, the Court has subject matter jurisdiction to consider the Petition.

## IV. DISCUSSION

Petitioner argues four grounds support vacatur: (1) Croft's "evident partiality" based on his prior participation as a plaintiff in a lawsuit against Morgan Stanley's predecessor; (2) Croft's alleged selective sleeping during the presentation of evidence, which prejudiced Petitioner's rights; (3) Croft exceeded the scope of his authority as arbitrator by awarding Respondent punitive damages; and (4) Croft's award demonstrates manifest disregard for the law. For the following reasons, the Court concludes none of these grounds merit vacatur under the narrow standard of review this Court must apply to a motion to vacate under Section 10 of the FAA.

### A. Partiality

To establish partiality under 9 U.S.C. § 10(a)(2), Petitioner must "demonstrate that a reasonable person would *have* to conclude that an arbitrator was partial to the other party to the arbitration." ANR Coal Co., Inc. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500 (4th Cir. 1999) (internal quotation marks omitted) (emphasis added). "The reasonable person standard requires a

6

Case 3:24-cv-00187-FDW-DCK    Document 69    Filed 02/07/25    Page 6 of 12

showing of something more than the 'appearance of bias,' but not the 'insurmountable' standard of 'proof of actual bias.'" Consol. Coal Co. v. Local 1643, United Mine Workers of Am., 48 F.3d 125, 129 (4th Cir. 1995) (quoting Morelite Contsr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 79 (2d Cir. 1984)).

To determine if a party has established partiality, a court should assess four factors: "(1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding." Id. Further, "[w]hen considering each factor, the court should determine whether the asserted bias is 'direct, definite and capable of demonstration rather than remote, uncertain or speculative' and whether the facts are sufficient to indicate 'improper motives on the part of the arbitrator.'" ANR Coal, 173 F.3d at 500 (quoting Consol. Coal 48 F.3d at 129).

Petitioner characterizes Croft's interest as "direct and definite." (Doc. No. 52, p. 14.) However, applying the Fourth Circuit's four factors, the Court concludes Petitioner has not demonstrated Croft was evidently partial to Respondent. Three decades ago, Croft sued a predecessor of Morgan Stanley as one of dozens of plaintiffs alleging fraud. He sought to recover his $50,000 investment, damages, and attorneys' fees, but his case was dismissed based on the statute of limitations. The indirect relationship between Morgan Stanley and its predecessor through three corporate mergers weighs against a finding of partiality. It is more akin to the "indirect relationship to the party in the arbitration proceeding" in Consolidated Coal than the direct relationship in Morelite, in which the arbitrator's father was an executive of a party. Compare Consol. Coal, 48 F.3d at 130 with Morelite Constr., 748 F.2d at 81. In addition, that case

7

involved a different subject matter entirely than the arbitration at issue here—fraud, not employment discrimination. This weighs against a finding of partiality. Croft is not, for example, a prior disgruntled employee of Morgan Stanley. Finally, as Petitioner acknowledges, the facts supporting Croft's alleged partiality are distant in time. (Doc. No. 52, p. 14.) Each of the other out-of-circuit cases Petitioner cites are easily distinguishable because they are closer in either time or directness of the relationship between the arbitrator and a party. See Citigroup Glob. Markets, Inc. v. Berghorst, No. 11-80250-CIV, 2012 WL 5989628, at **2, 4 (S.D. Fla. Jan. 20, 2012) (finding partiality where arbitrator was a party in a concurrent arbitration against another brokerage firm); Schmitz v. Zilveti, 20 F.3d 1043, 1044, 1049 (9th Cir. 2010) (finding partiality where arbitrator's law firm represented a party to arbitration). On balance, applying the Fourth Circuit's four-factor test, Petitioner has not demonstrated partiality sufficient to warrant vacatur.

Fourth Circuit precedent further dictates that Croft's failure to disclose his decades-old lawsuit alone is not sufficient to vacate an award. ANR Coal, 173 F.3d at 500 ("[A]n arbitrator's failure to reveal facts may be relevant in determining evident partiality under 9 U.S.C. § 10(a)(2), but the mere nondisclosure does not in itself justify vacatur."). Because none of the other factors support a finding of evident partiality here, the Court will not so find based only on Croft's responses to the JAMS questionnaire.[4]

**B.      Misconduct**

A court may vacate an arbitration award "where the arbitrators were guilty of misconduct" or any other "misbehavior by which the rights of any party [were] prejudiced." 9 U.S.C. § 10(a)(3). Croft allegedly slept through testimony from Petitioner's witnesses, specifically the testimony of

---

[4] The Court declines to reach the question of whether Petitioner is estopped from raising Croft's 1993 lawsuit because its existence was somehow available to Petitioner, whether through internal records or online legal search engines, because the Court concludes the lawsuit does not otherwise meet the standard to demonstrate evident partiality.

8

Barbara Power, Respondent's supervisor. (Doc. No. 53, ¶ 11, p. 5.) Petitioner claims this failure to hear evidence resulted in Croft determining Power "rubber stamped" Sario's allegedly discriminatory views, which is the theory under which he levied damages against Morgan Stanley rather than MSPB. (Doc. No. 52, p. 1.6)

An arbitrator "sleeping during testimony or having ex parte contacts" could warrant vacatur under Section 10(a)(3). Hott v. Mazzocco, 916 F. Supp. 510, 517 (D. Me. 1996). However, the Hott court was not presented with an allegedly inattentive arbitrator and instead pointed to sleeping as an example of misconduct in dicta. Further, Petitioner points only to a self-serving affidavit in support of this argument. Nothing in the transcript excerpts the parties submitted support these allegations. For example, Petitioner's counsel did not object during the hearing to Croft's alleged sleeping on at least five separate occasions. Mindful that the scope of this Court's review is "among the narrowest known at law," the Court concludes vacatur is inappropriate on this basis. Union Pac. R.R., 439 U.S. at 91.

**C.     Scope of Authority**

To establish an arbitrator exceeded his or her powers in violation of 9 U.S.C. § 10(a)(4), Petitioner must demonstrate the arbitration award fails to "draw its essence from the contract" and instead issues an award that "simply reflect[s] [his] own notions of justice." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013) (internal quotations omitted). Indeed, "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" Oxford Health Plans, 569 U.S. at 568–69 (quoting Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008)).

Petitioner argues Croft exceeded his powers by awarding punitive damages, which are "not allowed by law." (Doc. No. 52, p. 21.) Specifically, it argues the arbitration agreement and JAMS

9

rules required the Arbitrator to apply the law. (Doc. No. 53-1, ¶¶ 4, p. 2.) Petitioner argues the law: (1) does not permit the Arbitrator to unilaterally replace MSPB with its parent company, "Morgan Stanley;" (2) does not support a "cat's paw" theory of liability as to Sario; and (3) authorizes punitive damages under only limited circumstances, which the facts here do not support. 42 U.S.C. § 1981a(b)(1); see also Ward v. AutoZoners, LLC, 958 F.3d 254, 263 (4th Cir. 2020). Petitioner's arbitration counsel further avers: "It was my perception that Croft misapplied the Rules of Evidence in favor of Randall." (Doc. No. 52-1, p. 5.)

To the contrary, the Merits Award contains ample findings of fact and conclusions of law to support the Morgan Stanley's liability under a "cat's paw" theory, (Doc. No. 51-1, pp. 25–32, 31), a theory the Fourth Circuit recognizes. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.2d 277, 291 (4th Cir. 2004). With respect to awarding damages against Morgan Stanley, Croft began his analysis in the Merits Award with an explanation of how Petitioner Morgan Stanley Private Bank, N.A., fit into the overall Morgan Stanley ecosystem. (Doc. No. 51-1, p. 6; Doc. No. 60-9.) Petitioner attempts to relitigate the issue before this Court. (Doc. No. 52, pp. 19–20.) However, it cites no case where a court engaged in such a granular review of the arbitrator's application of the law. Cf. Williamson v. Diversified Crop Ins. Servs., 917 F.3d 247 (4th Cir. 2019) (vacating an award under § 10(a)(4) where arbitrator defied the unambiguous terms of an arbitration agreement and federal regulations in a unique, specialized market). And this Court must evaluate only whether the arbitrator did his job, not whether he did it well or whether the Court agrees with his conclusions. Petitioner invites this Court to engage in the kind of de novo review of an arbitrator's decision the vacatur standard prohibits.

To be sure, the Fourth Circuit recently reversed a punitive damages award in a similar case. Duvall v. Novant Health, Inc., 95 F.4th 778, 792–93 (4th Cir. 2024). However, there the Fourth

10
Case 3:24-cv-00187-FDW-DCK     Document 69     Filed 02/07/25     Page 10 of 12

Circuit reviewed a jury verdict on appeal, not an arbitration award. Id. It is not for this court—sitting in review of an arbitration award under Section 10 of the FAA—to second-guess Croft's application of the law to Respondent's claims. Rather, this Court must consider whether he fulfilled his obligations under the arbitration agreement. He did so.

Applying the deferential standard of review proscribed by Congress in this procedural posture, the Court concludes Croft did not exceed his powers by holding Petitioner's corporate parent liable under a cat's paw theory or by awarding punitive damages under Fourth Circuit precedent. He simply applied the law to the facts of this case in a way with which Petitioner disagrees. But that disagreement does not warrant vacatur.

**D.     Manifest Disregard**

"Manifest disregard is . . . an old yet enigmatic ground for overturning arbitral awards." Wachovia Sec., LLC v. Brand, 671 F.3d 472, 480 (4th Cir. 2012). As discussed above, there is serious doubt as to whether this common-law ground for vacatur remains available. However, the Fourth Circuit has not rejected the doctrine as a basis for vacatur. See Warfield, 26 F.4th at 669–70, 669 n.3 (considering and rejecting argument that arbitrator refused to apply a clearly defined legal principle and declining to reconsider Wachovia Securities). The standard for "manifest disregard" requires more than "showing that the arbitrators misconstrued the law." Wachovia Sec., 671 F.3d at 481. Rather, in order to vacate an arbitration award due to manifest disregard of the relevant law, the movant must show that: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." Id. at 483. See also Jones v. Dancel, 792 F.3d 395, 402 (4th Cir. 2015).

To demonstrate that "the disputes legal principle is clearly defined and is not subject to reasonable debate," Petitioner must have presented to Croft "binding precedent requiring a

11

contrary result." Id. at 402–03. Petitioner simply points to its arguments under Section 10, saying: "As discussed above, the Award should be vacated because the Arbitrator manifestly disregarded the law for the same reasons identified above." (Doc. No. 52, p. 21.) Therefore, for the same reasons the Court concludes the Arbitrator did not exceed his scope of authority, the Court also concludes he did not demonstrate manifest disregard for the law.

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Vacate, (Doc. No. 51), is DENIED.

**IT IS SO ORDERED.**

Signed: February 6, 2025

Frank D. Whitney
Senior United States District Judge